RENDERED:  OCTOBER 13, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1416-MR

JAMES L. MARCUM AND
WANDA MARCUM                                                      APPELLANTS


                          APPEAL FROM LAUREL CIRCUIT COURT
v.               HONORABLE MICHAEL O. CAPERTON, JUDGE
                          ACTION NO. 21-CI-00136


U.S. BANK, NATIONAL
ASSOCIATION, AS INDENTURE
TRUSTEE FOR THE CIM TRUST
2019-R3 MORTGAGE BACKED
NOTES, SERIES 2019-R3; BRADLEY
WAYNE JONES; CHARLES
BRUNER; AND DOUGLAS G.
BENGE AS THE MASTER
COMMISSIONER OF THE LAUREL
CIRCUIT COURT                                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND McNEILL, JUDGES.

CETRULO, JUDGE:  Appellants James L. Marcum and Wanda Marcum (together, "the Marcums") appeal the Laurel Circuit Court order denying their Kentucky Rule of Civil Procedure ("CR") 60.02 motion.  After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 2007, Appellee Charles Bruner ("Property Owner") executed a promissory note secured by his mortgage on an unimproved lot located at 255 Lem Bruner Lane in London, Kentucky ("Unimproved Lot").  However, the mortgage document incorrectly listed the address for a property across the street, 258 Lem Bruner Lane.  Although through a different bank, Property Owner also had a mortgage on the property at 258 Lem Bruner Lane, which contained a site-built, single-family dwelling house ("Dwelling Property").  Presumably, the confusion was due, at least in part, to the fact that Property Owner had mortgages on both properties.

Eventually, the mortgage on the Unimproved Lot was assigned to Appellee U.S. Bank, National Association, as Indenture Trustee for the CIM Trust 2019-R3 Mortgage Backed Notes, Series 2019-R3 ("U.S. Bank"), and in February 2021, Property Owner defaulted on the promissory note.[1]  U.S. Bank then filed a foreclosure complaint on the Unimproved Lot.  However, in the foreclosure

---

[1] Around the same time, Property Owner also defaulted on the Dwelling Property mortgage, which was part of a separate foreclosure action with Deutsche Bank National Trust Company.

complaint, U.S. Bank again incorrectly listed the address, using the Dwelling Property address. On April 16, 2021, the circuit court entered a default judgment in the foreclosure action on the Unimproved Lot and ordered its sale but, having relied on the information in the mortgage document, the order listed the property using the Dwelling Property's address ("April 2021 Judgment and Order of Sale").[2] Therefore, the real estate experts conducted the requisite appraisal on the Dwelling Property instead of the Unimproved Lot.

At the judicial sale in November 2021, Appellee Douglas G. Benge, the Laurel County Master Commissioner ("Master Commissioner Benge"), auctioned the Unimproved Lot using the address for the Dwelling Property. The Marcums bid $42,000 on what they thought was the Dwelling Property,[3] outbidding their competitors. That month, Master Commissioner Benge issued his report on the sale indicating that the Marcums had secured the Unimproved Lot but again listing the address for the Dwelling Property. After the ten-day exceptions period – during which no exceptions were filed – the circuit court confirmed the

---

[2] Although the documents contained the incorrect address, the legal description and parcel number/property tax identification number correctly identified the Unimproved Lot.

[3] The Marcums owned numerous properties near the Unimproved Lot and Dwelling House and were familiar with the area.

sale and issued the deed for the Unimproved Lot[4] to the Marcums on December 14, 2021 ("Order Confirming Sale").

In March and April 2022, the circuit court ordered distribution of the proceeds from the sale to Master Commissioner Benge, U.S. Bank, the Laurel County Sheriff, and the Laurel County Clerk. On July 1, 2022, the Marcums filed a motion for supplemental distribution of sale proceeds to get the remaining funds from the sale. In the motion, the Marcums noted that the property attached to the foreclosed mortgage – the Unimproved Lot – had been misidentified; and the mortgage, complaint, judgment, and notice of sale mistakenly listed the Dwelling Property's address. The Marcums explained that they had not learned of the mix-up until after they had spent $20,000 improving the house on the Dwelling Property. Two weeks later, the circuit court entered its order granting the Marcums' motion and distributing the excess proceeds – $17,723.23 – to them.

On July 29, 2022, the Marcums filed a motion to vacate the April 2021 Judgment and Order of Sale and set aside the judicial sale conducted on November 12, 2021, pursuant to CR 60.02(a) and (f).[5] Specifically, the Marcums

---

[4] Again, using the address for the Dwelling Property, but the parcel number and legal description for the Unimproved Lot.

[5] In pertinent part, CR 60.02(a) and (f) provide that "[o]n motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds:  (a) mistake, inadvertence, surprise, or excusable neglect; . . . or (f) any other reason of an extraordinary nature justifying relief."  On ground (a), the motion shall be

-4-

argued that the foreclosed property was misidentified with the wrong address, which they had relied upon in making their bid. The Marcums claimed that U.S. Bank should have obtained "a proper title report regarding the property," and "[a]ny capable abstractor would have been alerted [that] the physical address and the map identification number stated in the mortgage instrument identif[ied] different properties[.]" The Marcums contended that such oversight resulted in the misidentification throughout the record and "the erroneous notice of the judicial sale[,]" which had misinformed the public. Therefore, the Marcums argued the sale should be invalidated.

U.S. Bank objected to the motion claiming it was untimely; the Marcums failed to file exceptions to Master Commissioner Benge's Report of Sale, pursuant to CR 53.05(2); the Marcums could have ascertained the mistake using the property description and parcel number listed on the notice before they submitted a bid or before the Order Confirming Sale; the Marcums' motion was barred by the doctrine of caveat emptor; and the Marcums' lack of due diligence precluded relief on equitable grounds.

On August 26, 2022, before the circuit court ruled on the first CR 60.02 motion, the Marcums filed a second CR 60.02 motion, seeking relief

---

made "not more than one year after the judgment, order, or proceeding was entered or taken." CR 60.02.

under only subsection (a) and only regarding the Order Confirming Sale, entered in December 2021. In addition to their previous arguments, they claimed the sale must be set aside because an appraisal had not been conducted on the Unimproved Lot,[6] as required by Kentucky Revised Statute ("KRS") 426.520 and Administrative Procedures of the Court of Justice Rule ("AP") Part IV, § 5(2). However, the Marcums conceded that the property tax identification number and metes and bounds description of the foreclosed property in the court and loan documents matched the information for the Unimproved Lot.

U.S. Bank again opposed the motion. Despite the Marcums' shift from challenging the Judgment and Order of Sale to challenging the Order Confirming Sale, U.S. Bank argued CR 60.02(a) still did not provide relief because the information the Marcums relied upon to bring the motion was readily available to them in the public records before entry of the Order Confirming Sale. It was undisputed that the Marcums did not conduct a title search between the April 2021 Judgment and Order of Sale and the Order Confirming Sale. Further, U.S. Bank argued the mistake in the appraisal provided no basis for relief.

After a brief hearing on the motions in September 2022, the circuit court entered its November 2022 Order denying both of the Marcums' CR 60.02 motions and discounting their argument that U.S. Bank was unjustly enriched. The

---

[6] As mentioned, the appraisal was conducted on the Dwelling Property.

-6-

circuit court noted that the Marcums had not taken any exception to Master Commissioner Benge's Report of Sale and that the sale was confirmed without objection. Although the circuit court acknowledged that CR 60.02 could apply to orders confirming judicial sales, it concluded that here, the conditions for its application were not satisfied. The circuit court explained that the first CR 60.02 motion to vacate the April 2021 Judgment and Order of Sale was meritless: it was untimely under subsection (a), and subsection (f) was not applicable. As for the second CR 60.02 motion to vacate the December 2021 Order Confirming Sale, the circuit court found that CR 60.02(a) was not the appropriate remedy, because the Marcums had adequate opportunity to ascertain the mistake before it entered the Order Confirming Sale. Additionally, the circuit court found the mistaken appraisal on the wrong property did not render the sale void under KRS 426.520. Finally, the circuit court concluded that unjust enrichment did not provide an avenue for relief.

The Marcums appealed the November 2022 Order only as it pertained to the second CR 60.02 motion to vacate the Order Confirming Sale. The Marcums now argue that the circuit court erred when it (1) denied their CR 60.02 motion for untimeliness; (2) found the doctrine of caveat emptor to be applicable;

-7-

(3) denied the applicability of the doctrine of unjust enrichment; and (4) found the Order Confirming Sale to be valid, despite the mistaken appraisal property.[7]

## STANDARD OF REVIEW

When a trial court denies a CR 60.02 motion, this Court reviews it using the abuse of discretion standard. *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011) (citing *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)). "The test for abuse of discretion is whether the trial court's decision was 'arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

## ANALYSIS

### A.    CR 60.02 Motion to Vacate the Order Confirming Sale

First, the Marcums argue that the circuit court "misapplied" CR 60.02. The Marcums claim that the circuit court incorrectly found the CR 60.02(a) motion to be untimely because it was filed on August 26, 2022, less than a year after it entered its Order Confirming Sale in December 2021.[8] However, as noted, the Marcums had filed two CR 60.02 motions. The circuit court's reference to

---

[7] Additionally, the Marcums argue – for the first time – that the doctrine of unclean hands applied to U.S. Bank. As that issue was not raised in the circuit court, it is not properly before this Court. *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010) (finding an issue the circuit court had not addressed below was "not properly preserved for appellate review").

[8] As mentioned, a motion brought under CR 60.02(a) shall be made "not more than one year after the judgment, order, or proceeding was entered or taken."

untimeliness applied to the Marcums' first CR 60.02 motion to vacate the April Judgment and Order of Sale, which the circuit court correctly noted had been filed in July 2022, more than a year after it entered the order. Alternatively, the circuit court had explained that the second CR 60.02(a) motion was denied because it found that "from a substantive perspective, . . . the mistaken association of the 258 Lem Bruner Lane address with the property description and parcel number for 255 Lem Bruner Lane could have been ascertained as a matter of public record."

As such, the circuit court concluded that the Marcums could not seek relief under CR 60.02 because the grounds for CR 60.02 relief could have been ascertained "by the exercise of due diligence prior to the entry of the" order. A court may grant CR 60.02 relief "only with extreme caution and only under the most unusual and compelling circumstances" – *id.* (citation omitted) – and the circumstances here do not meet such a standard.

As the circuit court explained, where CR 60.02 grounds

> were known or could have been ascertained by the exercise of due diligence prior to the entry of the questioned judgment, then relief cannot be granted from the judgment under a [CR] 60.02 proceeding. Relief afforded by a [CR] 60.02 proceeding is extraordinary in nature and should be related to those instances where the matters do not appear on the face of the record, were not available by appeal or otherwise, *and were discovered after rendition of the judgment without fault of the party seeking relief.*

*Bd. of Trs. of Policemen's & Firemen's Ret. Fund of City of Lexington v. Nuckolls*, 507 S.W.2d 183, 186 (Ky. 1974) (emphasis added).

The circuit court stated that "[h]ad [the Marcums] conducted a title search or reviewed the same public records that they charge [U.S. Bank] with having overlooked, they could have discovered the mistake, filed timely exceptions, and obtained relief from the sale while it was still within the power of the parties and the Court to correct the mistake." Here, the circuit court noted, the Marcums had an available remedy under CR 53.05(2), which provided that any party seeking to bring an action on a master commissioner's report has ten days to object to the report in writing. The circuit court emphasized that Kentucky precedent *requires* a party to file exceptions under CR 53.05(2) before entry of a final and appealable order "as a prerequisite for seeking relief from the resulting order." *See Eiland v. Ferrell*, 937 S.W.2d 713, 716 (Ky. 1997) (quoting *U.S. v. Central Bank & Tr. Co.*, 511 S.W.2d 212, 214 (Ky. 1974) ("In general, a party who desires to object to a report must do so as provided in CR 53.06(2) [now CR 53.05(2)] or be precluded from questioning on appeal the action of the circuit court in confirming the commissioner's report.")). The Marcums failed to do so.

The circuit court held that the Marcums' failure to conduct due diligence and file exceptions or otherwise object to the sale prior to confirmation was dispositive under CR 60.02. We agree. Such determination was not

-10-

"arbitrary, unreasonable, unfair, or unsupported by sound legal principles" – *Age*, 340 S.W.3d at 94 (citation omitted) – therefore, the circuit court did not abuse its discretion.

### B.     Doctrine of Caveat Emptor

Next, the Marcums argue that the circuit court erred when it found the doctrine of caveat emptor to be applicable.  In so finding, the circuit court explained that Kentucky Courts have long held that

> [t]he universal rule appears to be that the doctrine of caveat emptor applies to a purchaser at a judicial sale [when] his offer or bid is submitted to the court, which with us is the report of sale by the commissioner, and that report has been acted on in such a way as to become final, and after which it passes beyond the power of the court to molest or disturb, and that time is, as has been frequently held by this court, when the sale has been confirmed and the term at which it was done expired or was finally adjourned.

*McGuire v. Garrett*, 270 S.W. 4, 5 (Ky. 1925) (citations omitted).

Although supported by nearly 100 years of Kentucky precedent, the Marcums find such conclusion to be "manifestly unfair and inequitable . . . when the Marcums were directly misled and deceived by the acts and omissions of the originating lender."  However, the Marcums never alleged nor proved that U.S. Bank conducted themselves in a fraudulent manner.  The highest Court in Kentucky has made clear, "where the [judicial] sale has been confirmed, and no fraud practiced by the creditor on the purchaser, to induce the purchase or warranty

of title, no relief will be granted[.]" *Farmers' Bank v. Peter*, 76 Ky. 591, 594 (1878).

Moreover, the Marcums argue that U.S. Bank should have diligently complied with KRS 426.006 and obtained a proper title report for the property identified in the mortgage. If they had done so, the Marcums argue, a "capable title abstractor" would have realized the fair cash values and tax bills for the Unimproved Lot did not match the appraisal value. As such, the Marcums claim U.S. Bank was on notice "of the high probability that the appraisal related to the wrong property[.]"

However, KRS 426.006 does not require a party to obtain a title report. KRS 426.006 provides that

> [t]he plaintiff in an action for enforcing a lien on property shall state in his petition the liens held thereon by others, making them defendants; and may ask for and obtain a judgment for a sale of the property to satisfy all of said liens which are shown to exist, though the defendants fail to assert their claims. Such defendants shall not, however, be allowed to withdraw or receive any of the proceeds of such sale, until they have shown their right thereto by answer and cross claim, which shall be asserted as provided in the Rules of Civil Procedure.

The statute contains no duty on the part of a plaintiff to obtain a title report to protect a subsequent buyer. Instead, the statute requires the plaintiff to state all liens held on a property in the petition to enforce a lien. The statute,

-12-

however, does not dictate the way in which a plaintiff is to collect such information and certainly does not require a title report.

Further, the Marcums contend that "as lay individuals, they should not be limited to a mere ten days to expose that U.S. Bank's mortgage indentifie[d] the wrong property[.]" However, CR 53.05(2) does not contain such a distinction. As discussed, the rule simply provides that "[w]ithin 10 days after being served with notice of the filing of the [master commissioner's] report any party may serve written objections thereto upon the other parties." *Id.* There is no indication that such rule does not apply to "lay persons."[9]

Kentucky caselaw has been clear:

> where there is a judgment to enforce the mortgage, and a sale under it, the purchaser buys at his peril, and can not [*sic*] complain of a want of title, unless he applies to the chancellor before the sale is completed by an order of confirmation, or during the term in which the chancellor has the power to disregard or modify such an order.

*Columbia Life Ins. Co. v. Smith*, 111 S.W.2d 618, 621 (Ky. 1937) (quoting *Farmers' Bank*, 76 Ky. at 594).

The Marcums' failure to conduct a title search and submit exceptions pursuant to CR 53.05 within ten days of the master commissioner's report finalized the report. When the report became final, the doctrine of caveat emptor attached

---

[9] Nor have the Marcums presented any evidence that they are "lay persons."

-13-

and "it passe[d] beyond the power of the court to molest or disturb" the final order. *McGuire*, 270 S.W. at 5. The circuit court's findings were supported by sound legal principles, resulting in a fair and reasonable outcome. The circuit court did not abuse its discretion when it made such findings.

### C.    Unjust Enrichment

The Marcums argue that U.S. Bank "received a windfall distribution" because its judgment against Property Owner was for $8,829.31 plus interest and costs; however, the Marcums paid $42,000 at the judicial sale. Additionally, they claim the Unimproved Lot was worth only $1,500.

In the November 2022 Order, the circuit court noted that unjust enrichment is an equitable, not legal, remedy. *See Satterfield v. Satterfield*, 608 S.W.3d 171, 173 (Ky. App. 2020) (citation omitted). The Kentucky Supreme Court has explained that equitable remedies, like unjust enrichment, are supplemental to the law *only* "when there is no remedy at law. . . . But . . . if there *is* a statute or case precedent or rule going a certain way, a trial court may not depart from it on the basis of equity." *Bell v. Commonwealth*, 423 S.W.3d 742, 747-48 (Ky. 2014) (citing *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 820 (Ky. App. 2008)).

Here, judicial sales have a legal remedy built into the statute, CR 53.05(2); however, the Marcums failed to use that remedy and submit

-14-

exceptions to the master commissioner's report before finality. As such, the circuit court concluded that, while unfortunate, the Marcums failed to avail themselves of the applicable legal remedy during the appropriate timeframe. The circuit court stated that "when a purchaser does not avail themselves of that [legal] remedy, they forfeit the right to later challenge the sale." We agree. If the Marcums had investigated the title to the property, they could have submitted exceptions during the allotted period and obtained complete relief from the sale prior to its confirmation. Because there was a remedy at law, supplemental equitable remedies are not appropriate in these circumstances. *See Bell*, 423 S.W.3d at 747-48 (citation omitted).

The circuit court did not abuse its discretion when it found an equitable remedy, including the doctrine of unjust enrichment, was not applicable.

### D. Validity of the Order Confirming Sale

Finally, the Marcums argue that the Order Confirming Sale is void. Specifically, they argue the failure to appraise the Unimproved Lot rendered the sale invalid under KRS 426.520. KRS 426.520 provides that the master commissioner shall have any real property appraised before it is sold under a judgment of the court. Because the incorrect address was posted on the notice of sale, the real estate experts appraised the Dwelling Property instead of the Unimproved Lot before its sale. U.S. Bank contends that the Marcums are

-15-

"mistaken" because the statute does not provide that judicial sales without an appraisal are void. Additionally, U.S. Bank notes that the requirement for an appraisal is to "establish the redemption amount and, thereby, allow the debtor to redeem the foreclosed property if it is sold for less than two-thirds of its value[,]" citing KRS 426.530. *See also Vallandigham v. Worthington*, 2 S.W. 772, 773 (Ky. 1887) (The statutory "valuation is for the benefit of the debtor, and to secure him in his legal right to redeem if the land does not bring two-thirds of its appraised value.").

The circuit court agreed, finding that the appraisal taking place on the Dwelling Property instead of the Unimproved Lot did not render the sale void. In *Vallandigham*, the highest Court in Kentucky did "not regard the statutory [valuation] provision as so mandatory that a failure to literally observe it would necessarily render a sale void, but if a failure to follow it occurs, which is material and reaches to the essence of the debtor's [Property Owner's] rights, he may be allowed in equity to redeem." *Id.* Thus, under Kentucky law, if mistakes of fact in a valuation deprive the debtor of his right to redemption and the debtor files exceptions based on those mistakes, then the court should sustain "the exceptions to the master commissioner's report of sale and set aside the sale." *Elswick v. Justice*, 154 S.W.2d 714, 715 (Ky. 1941).

-16-

Here, however, the Marcums were not the debtor to which such provisions apply. The Marcums did not file exceptions and the debtor (here, Property Owner) is not the party seeking to set aside the judicial sale. U.S. Bank notes that it is unaware of any Kentucky case that gives the purchaser the right to void a judicial sale due to a mistaken appraisal or lack of an appraisal, particularly at such a late date. Likewise, the Marcums failed to provide any such precedent.

Moreover, the Marcums are precluded from now arguing the order was invalid, under the doctrine of election of remedies. Once the Marcums had realized the mistaken address, the Marcums filed a motion to receive excess funds from the sale to recover money they had spent on the Dwelling Property. It was not until weeks after that first motion, and after the circuit court had released the excess funds to them, that the Marcums began filing CR 60.02 motions. U.S. Bank argues that the Marcums thereby chose a remedy inconsistent with their subsequent effort to vacate the sale under CR 60.02. Again, we agree.

In *Potts v. Strickland*, 202 S.W.2d 392, 393 (Ky. 1946), the highest Court in Kentucky explained that

> [t]he doctrine of election of remedies, which has received almost universal approval, is tersely and clearly stated in *Kearney Milling & Elevator Co. v. Union Pacific Railroad Co.*, 97 Iowa 719, 66 N.W. 1059, 1061, 59 Am. St. Rep. 434 [(1896)], wherein the Court said: "A man may not take two contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation

-17-

or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again."

There, the appellant elected "to ratify the sale" of property and "pursued the proceeds of the sale."[10]  *Id.*  After he received the proceeds, however, he filed suit to declare the sale void.  *Id.*  The Court held that, under the doctrine of election of remedies, the appellant could not "at this time be heard to repudiate the act formerly ratified by him."  *Id.* at 394.

Here, similarly, the Marcums chose to acquire the excess funds from the judicial sale.  Then, once the funds cleared, they sought to void the sale.  Accordingly, under the doctrine of election of remedies, the Marcums are not "permitted to assert the truth of each of two inconsistent positions at the same time, or at different times, according to the promptings of his best interests."  *Id.* at 393 (citing *Riley v. Cumberland & Manchester R.R. Co.*, 29 S.W.2d 3, 4 (Ky. 1930)).  As such, the circuit court did not abuse its discretion.

**CONCLUSION**

The circuit court did not abuse its discretion when it denied the Marcums' CR 60.02 motion, found the doctrine of caveat emptor applied, found

---

[10] Although this case involved property acquired through marriage, not a judicial sale, we find the concepts valuable in this context.

-18-

equitable doctrines to be inapplicable, and determined the Order Confirming Sale was valid.  Therefore, the November 2022 Order is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Ralph W. Hoskins
Corbin, Kentucky

BRIEF FOR APPELLEES:

Bethany A. Breetz
Neal Bailen
Louisville, Kentucky